**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Mary Smith,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV11-1242-PHX-JAT<br><br>**ORDER** |

　　　Plaintiff Margaret Mary Smith appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on her appeal (Doc. 17.)

**I.　BACKGROUND**

　　**A.　Procedural Background**

　　　In October 2007, Plaintiff filed applications for benefits under Titles II and XVI of the Social Security Act. She claimed that she became disabled on November 2, 2006, due to: fibromyalgia, chronic fatigue, diabetes, chronic low back pain, valley fever, and hyperthyroidism. Plaintiff's applications were denied initially and on reconsideration. Plaintiff testified at a hearing before Administrative Law Judge Joan G. Knight (the "ALJ") on January 20, 2010. The ALJ issued an unfavorable decision on April 27, 2010. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff filed this appeal pursuant to 42 U.S.C. §405(b) on June 24, 2011.

### B. Vocational Background

Plaintiff was born in 1953 and was 53 years old on her alleged onset of disability date and 56 years old at the time of the ALJ's decision denying benefits. Plaintiff has a high school equivalent education. She worked in the past as a casino shift manager, casino supervisor, and keno writer.

### C. Medical Background

In November 2007, Tutankhamen Pappoe, M.D., examined Plaintiff based on her complaints of neck and lower back pain. Plaintiff had some tenderness to palpation in her neck and lower back, but she had normal motor strength, sensation, and reflexes; full range of motion of the cervical and lumbar spine; and a negative straight-leg raising test bilaterally. Dr. Pappoe diagnosed Plaintiff with cervical facet syndrome, lumbar facet syndrome, and lumbar radiculopathy.

A November 2007 MRI of Plaintiff's cervical spine revealed mid-cervical straightening, a small disc protrusion at C6-C7 with mild to moderate central canal stenosis, and a small disc protrusion at C5-6 and C7-T1. A lumbar spine MRI at that time revealed a mild bulge at L4-5 with a very small disc protrusion, mild right L4-L5 neural foraminal narrowing, and a minor annular bulge at L3-L4. A thoracic spine MRI revealed a very small protrusion at T4-5, with no central canal stenosis or exiting nerve root compression.

In March 2008, Thomas Glodek, M.D., a state agency physician, reviewed the medical record and completed a physical residual functional capacity assessment. Dr. Glodek determined that Plaintiff could perform a range of light work. He also found that she had no manipulative, visual, or communicative limitations, but that she was precluded from concentrated exposure to work hazards.

Spinal surgeon Edward Song, M.D., evaluated Plaintiff in March 2008, when she complained of cervical, lumbar, thoracic, and bilateral sciatic pain. On examination, Plaintiff had mild spinal tenderness and slightly limited range of motion of the lumbar spine. She had no neurological deficits, expect decreased sensation in the left humeral

area in the upper extremity, left medial thigh, lateral calf, and right foot. Plaintiff had normal range of motion in the upper and lower extremities, including the shoulders, elbows, hips, and knees, as well as normal range of motion in the cervical and thoracic spine. Her motor strength was normal in the upper and lower extremities and her straight-leg raising was negative bilaterally. Dr. Song diagnosed Plaintiff with degeneration of a lumbar or lumbosacral intervertebral disc. He did not believe that she was a candidate for spine surgery and recommended medical pain management for possible fibromyalgia or other systemic disorder. Dr. Song found that Plaintiff could lift as tolerated and had no other work-related limitations.

In April 2008, treating physician Jeffrey Levine, M.D., completed an assessment of Plaintiff's physical ability to do work-related activities, indicating that she could: lift and carry less than 10 pounds; stand and walk for less than 2 hours in an 8-hour workday; sit for 2 hours in an 8-hour workday (and she needed to alternate between sitting and standing every 30 minutes); never climb, stoop, crouch, or crawl; occasionally kneel; continuously balance; never reach; and continuously handle, feel, and use hands for fine manipulation; and that she had no environmental limitations. Dr. Levine also completed a "pain functional capacity questionnaire," indicating Plaintiff had moderately severe pain that frequently interfered with her attention and concentration and frequently caused deficiencies of concentration, persistence, and pace.

James Huddleston, Ph.D., a psychologist, evaluated Plaintiff in October 2008 at the request of the state agency. Dr. Huddleston diagnosed Plaintiff with major depressive disorder, moderate, chronic, without psychotic features and anxiety disorder, not otherwise specified (NOS), mild. He completed a medical source statement finding that Plaintiff was mildly impaired in social interaction and in sustained concentration and persistence, was capable of managing simple to moderately complex tasks on a sustained basis, and was mildly impaired in her ability to respond adaptively to normal environmental demands and stressors.

Jaine Foster-Valdez, Ph.D., a state agency psychologist, reviewed Plaintiff's

medical record in October 2008 and completed a Psychiatric Review Technique Form (PRTF). Based on a review of the record, Dr. Valdez found that, under the "B" criteria of the Listing of Impairments, Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Dr. Valdez concluded that Plaintiff's mental impairments were not severe.

Wayne Broky, M.D., examined Plaintiff in November 2008 at the request of the state agency. During the examination, Plaintiff had discomfort to palpation over the upper and lower spine and multiple tender points, but walked with a normal gait. She had full range of motion in the shoulders, elbows, wrists, fingers, hips, knees, and ankles; normal muscle strength and sensation in all extremities; and negative straight-leg raising bilaterally. Dr. Broky diagnosed Plaintiff with symptoms characteristic of fibromyalgia syndrome with a history of chronic fatigue syndrome; type 2 diabetes mellitus; history of chronic lower back pain (history of bulging lumbar disks); history of valley fever; hypothyroidism; and depression. He completed a physical assessment of Plaintiff's physical ability to do work-related activities, finding that Plaintiff: could occasionally lift and carry 50 pounds and frequently lift and carry 10 pounds; could stand and/or walk 6 to 8 hours in an 8-hour workday; had no limitations in sitting; could never climb ropes or scaffolds; could occasionally climb ladders, kneel, crouch, or crawl; could frequently climb ramps or stairs, and stoop; had no limitations in reaching, handling, fingering, or feeling; and had no environmental limitations, except for working around extremes in temperature.

Martha Goodrich, M.D., a state agency physician, reviewed the medical record in November 2008 and concurred with Dr. Glodek's March 2008 opinion that Plaintiff could perform light work.

## II.   LEGAL STANDARD

A district court:

> may set aside a denial of disability benefits only if it is not

> supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Also under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)(internal quotation omitted).

### III. DISCUSSION

To qualify for disability benefits under the Social Security Act a claimant must show, among other things, that she is "under a disability." 42 U.S.C. §423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §423(d)(2)(A).

The Social Security regulations set forth a five-step sequential process for

evaluating disability claims.  20 C.F.R. §404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  A finding of "not disabled" at any step in the sequential process will end the inquiry.  20 C.F.R. §404.1520(a)(4).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step.  *Reddick*, 157 F.3d at 721.  The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity."  20 C.F.R. §404.1520(a)(4)(i).  If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R. §404.1520(a)(4)(ii).  To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §404.1520(c).  Basic work activities are the "abilities and aptitudes to do most jobs," for example: lifting; carrying; reaching; understanding, carrying out and remembering simple instructions; responding appropriately to co-workers; and dealing with changes in routine.  20 C.F.R. §404.1521(b).  Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months."  20 C.F.R. §404.1509 (incorporated by reference in 20 C.F.R. §404.1520(a)(4)(ii)).  The "step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  If the claimant does not have a severe impairment, the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations.  20 C.F.R. §404.1520(a)(4)(iii).  If so, the claimant is found disabled without further inquiry.  If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] record."  20 C.F.R. §404.1520(e).  A claimant's "residual functional capacity" (the "RFC") is the most she can do despite all her impairments, including those that are not severe, and any related symptoms.  20 C.F.R. §404.1545(a)(1).

4.  At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. §404.1520(a)(4)(iv). To make this determination, the ALJ compares the "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5.  At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. §404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." 20 C.F.R. §404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the Commissioner has the burden of proving the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In this case, the ALJ concluded at step four of the sequential process that Plaintiff was not disabled. The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) — she can stand and/or walk, with normal breaks, about 6 hours out of an 8-hour workday; sit, with normal breaks, about 6 hours out of an 8-hour workday; has no limitations in pushing and pulling other than the weight restrictions for lifting and carrying; can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; and can frequently balance, stoop, kneel, crouch, and crawl. The ALJ additionally found that Plaintiff needs to avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery. The ALJ determined that Plaintiff was capable of performing her past relevant work as a casino shift manager, casino supervisor, and Keno writer.

### A. Credibility Determination

The ALJ did not accept Plaintiff's complaints regarding her level of symptoms and limitation during the relevant time. (Tr. 298.) If a claimant produces objective medical

evidence of an underlying impairment, as Plaintiff did here, then the ALJ cannot reject the claimant's subjective complaints based solely on a lack of objective medical support for the alleged severity of the pain. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). If the ALJ finds the claimant's subjective testimony not credible, the ALJ must make findings sufficiently specific to allow the reviewing court to conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Id.* at 856-57. If no affirmative evidence of malingering exists, then the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony about the severity of her symptoms. *Id.* at 857.

After reviewing the evidence, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they conflicted with the ALJ's residual functional capacity assessment. The ALJ rejected Plaintiff's subjective testimony in part because the medical record showed that many of Plaintiff's problems were resolved through surgical or other treatment and because the medical record generally did not support Plaintiff's subjective reporting. The ALJ also found that Plaintiff's statements regarding her activities of daily living — she took care of pets, prepared simple meals, performed simple housework, used the computer, handled monetary matters, drove, shopped in stores, and spent time with others — were inconsistent with her allegations of debilitating limitations.

The ALJ further noted that Plaintiff made inconsistent statements regarding the reasons she left her last employment. Plaintiff told Dr. Broky that she last worked at a casino in 2005 and that she was fired for behavioral issues, but she told Dr. Huddleston that she had issues with a supervisor and was terminated, then quit after filing a grievance and winning.[1] And Plaintiff reported that she has applied for jobs without success during

---

[1] A claimant's testimony that she left her last employment for reasons other than her impairment provides a specific and cogent reason for rejecting the claimant's subjective symptom testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)("[T]he ALJ satisfied the *Bunnell* standard by providing specific, cogent reasons for disregarding [claimant's] testimony. For example, the ALJ stated that she found Bruton's subjective pain complaints not credible because, *inter alia*: (1) Bruton stated at the

the period of her claimed disability, which the ALJ found inconsistent with Plaintiff's allegation that she is unable to work.

The ALJ could not reject Plaintiff's subjective complaints based solely on a lack of objective medical support for the alleged severity of the pain. *Rollins*, 261 F.3d at 856. But the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective testimony by relying on a lack of corroborating medical evidence as well as the additional reasons listed above. Standing alone, perhaps none of the reasons given by the ALJ for rejecting Plaintiff's subjective testimony is sufficient, but, in combination, they meet the clear and convincing standard. The Court therefore affirms the ALJ's credibility determination.

### B.    Medical Source Opinion

Plaintiff claims the ALJ erred by giving "little weight" to the opinion of Dr. Levine, Plaintiff's treating physician. Dr. Levine opined that Plaintiff could lift and carry less than 10 pounds, could stand and/or walk less than two hours, could sit for only two hours, and had to alternate between sitting and standing every 30 minutes. The ALJ found that Plaintiff is less restricted than that assessment.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)(quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2).

---

administrative hearing and to at least one of his doctors that he left his job because he was laid off . . . .").

On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at 631. Substantial evidence that contradicts a treating physician's opinion may be either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (quoting *Lester*, 81 F.3d at 830).

Because Dr. Levine's opinion was contradicted, the ALJ had to give specific and legitimate reasons for rejecting his opinion. *Id.* The ALJ offered only the following for giving "little weight" to Dr. Levine's opinion: "Limited weight is given to the opinion . . . of the claimant's treating physician, Dr. Jeffrey Levine, because it is inconsistent with the record as a whole. . . . However, the medical evidence shows that the claimant is less restricted than determined by Dr. Levine." (Doc. 11-4, p. 57.) These brief, general statements regarding the medical record are not sufficiently specific for the Court to determine why the ALJ rejected the opinion of the treating physician. The ALJ therefore failed to give specific and legitimate reasons for rejecting Dr. Levine's medical opinion.

## C. Remand for Further Proceedings

Plaintiff requests that the Court remand for an immediate award of benefits. The Commissioner argues that if the Court finds the ALJ erred, the Court should remand for further proceedings, rather than for an award of benefits.

The Court always has discretion whether to remand for further proceedings or for payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000). "The

district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).

Because there are conflicting medical opinions regarding Plaintiff's ability to do work-related activities and because substantial evidence supports the ALJ's conclusion that the medical record shows that Plaintiff is less restricted than Dr. Levine opined, outstanding issues remain that must be resolved before a determination of benefits can be made. The Court therefore will remand to the Commissioner to hold a new hearing and to make a new determination regarding Plaintiff's entitlement to disability benefits.

Accordingly,

**IT IS ORDERED** reversing the Commissioner's denial of benefits and remanding for further administrative proceedings in accordance with this Order.

Dated this 15th day of August, 2012.

James A. Teilborg
United States District Judge